UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| TOROBEREJA THOMAS, | ) |  |
|---|---|---|
|  | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 4:07CV460 CDP |
|  | ) |  |
| JAMES PURKETT, | ) |  |
|  | ) |  |
| Respondent. | ) |  |

## MEMORANDUM AND ORDER

This matter is before the Court on the petition of Torobereja Thomas for writ of habeas corpus under 28 U.S.C. § 2254. Thomas is currently serving a life sentence for first-degree murder and armed criminal action. I conclude that Thomas's first two claims are procedurally barred, and his last two claims fail on the merits. I will therefore deny the petition.

## Factual Background

The following recitation of facts comes from the Missouri appellate court's opinion affirming the conviction and sentence in this case:[1]

The evidence, viewed in the light most favorable to the verdicts, established that on November 12, 1999, at approximately 7:00 p.m.,

---

[1] Under 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Leubbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003)).

four men were traveling in a Ford Bronco on a street in the City of St. Louis. They stopped at a stop sign. A Pontiac Trans Am, going the opposite direction, stopped beside them. Three men were in the Trans Am; defendant was the driver.

All of the men were acquainted with each other. The front seat passenger in the Bronco had engaged in previous altercations with defendant, the latest having occurred earlier that day, about 4:00 p.m. At that time, he confronted defendant in the parking lot of a body shop and hit defendant. Their friends broke up the fight.

When the vehicles were along side each other, the men exchanged words. After the Bronco drove away, defendant made a U-turn in the Trans Am and followed close behind the Bronco. The man seated in the front passenger seat of the Trans Am leaned out of the window and began firing a gun at the Bronco. The Bronco sped up. Defendant pursued the Bronco for about one-half mile while his passenger continued to shoot at it. One of the men in the back seat of the Bronco . . . was hit and died from a gunshot to the head. Defendant fled the scene.

State v. Thomas, 75 S.W.3d 788, 789-90 (Mo. Ct. App. 2002).

## **Procedural Background**

Thomas is currently incarcerated at Eastern Reception Diagnostic Correctional Center. He was convicted pursuant to a jury verdict of one count of murder in the first degree and one count of armed criminal action, in the Circuit Court of the City of St. Louis, Missouri, on February 7, 2001, for the murder of Albert Walker. The court sentenced him to life imprisonment without probation and parole for the murder conviction and to life imprisonment for the armed

criminal action conviction, the sentences to run concurrently. Thomas appealed his conviction and sentence to the Missouri Court of Appeals, arguing that there was insufficient evidence to support a conviction and that the trial court erred in improperly instructing the jury. The Missouri Court of Appeals affirmed the conviction and sentence on July 11, 2002. Thomas sought and was denied a transfer to the Missouri Supreme Court on June 25, 2002.

On September 23, 2002, Thomas filed a motion for post-conviction relief under Missouri Rule 29.15. In the post-conviction motion, Thomas alleged he was denied effective assistance of counsel because his trial counsel: (1) deprived him of the right to testify in his own defense; (2) refused to call witnesses despite promising to do so in front of the jury; (3) failed to investigate witnesses; and (4) refused to cross-examine witnesses. On December 10, 2004, following an evidentiary hearing, the motion court denied the motion. Thomas appealed the denial of his motion to the Missouri Court of Appeals. On March 8, 2006, the Missouri Court of Appeals affirmed the denial of Thomas' post-conviction motion.

## **Grounds Raised**

Thomas now seeks federal habeas corpus relief, asserting the following grounds:

(1) Thomas was denied due process of law when the prosecutor failed to disclose a deal made with witness Laddarrell Ford in exchange for his testimony;

(2) Thomas is actually innocent based on newly discovered evidence;

(3) Thomas was denied effective assistance of counsel because trial counsel deprived him of the right to testify in his own defense;

(4) Thomas was denied effective assistance of counsel because trial counsel failed to investigate and subpoena witnesses.

## Exhaustion of Remedies and Procedural Bar: Grounds 1 and 2

Respondent asserts that Thomas' first two grounds are procedurally barred because he failed to raise them in state court. To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . is procedurally barred from raising them in a federal habeas action, regardless of whether or not he has exhausted his state remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the

substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (*en banc*) (citation omitted). "Fairly present" means that state prisoners are required to "refer to a specific federal constitutional right, a particular constitutional case, or a state case raising a pertinent federal constitutional issue." Id. at 411-12. A state law claim that is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The Supreme Court has held that a state prisoner can overcome procedural default if he or she can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. The Court explained that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Id. at 753 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). "To fit within the fundamental miscarriage of justice exception, a petitioner must make a showing of actual innocence." Weeks v. Bowersox, 119 F.3d 1342, 1350 (8th Cir. 1997) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995)). In order to make a showing of actual innocence, a petitioner "must show that it is more likely than

not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 327.

Respondent argues that Ground 1of Thomas' claim for relief is procedurally barred because Thomas did not file or raise the issue in any of his state court proceedings. Thomas contends that the *Brady* violation alleged in Ground 1 was not discovered until after he had exhausted his state court remedies, making the present petition the first procedural vehicle available to seek relief. The Eighth Circuit has noted that *Brady* claims "provide their own cause and prejudice to overcome the procedural bar . . . if the material in question was not discovered until after the deadline for presenting the claim to the state courts." Hall v. Luebbers, 296 F.3d 685, 699 (8th Cir. 2002) (citing Parkus v. Delo, 33 F.3d 933, 940 (8th Cir. 1994)). A review of the record in this case reveals that Thomas had knowledge of the alleged deal at the time he filed his motion for post-conviction relief. In fact, Thomas called witness Bertha Linsey to testify about the alleged deal at his evidentiary hearing in support of the motion. Contrary to his assertions, Thomas was aware of the claim and could have raised it in his motion for post-conviction relief. In light of these facts, Thomas cannot establish sufficient "cause" to excuse his procedural default.

Thomas also fails to make the requisite showing of "actual innocence"

necessary to satisfy the "fundamental miscarriage of justice" exception. While Thomas does claim he is "actually innocent," he asserts this claim as an independent ground for relief, as opposed to using it as a vehicle to excuse his procedural default under the "fundamental miscarriage of justice" exception. The Supreme Court has held that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993). As an independent ground for relief, Thomas' "actual innocence" claim fails. Even if he intended to assert "actual innocence" to excuse his procedural default, Thomas still fails to make the requisite showing. In support of his claim of "actual innocence," Thomas relies on an affidavit signed by witness Laddarrell Ford in which Ford recants his testimony implicating Thomas. Assuming that Ford's affidavit is reliable, there were still two eye-witnesses who testified against Thomas at trial. A reasonable juror could choose to believe the testimony of either of these two witnesses as opposed to Ford's recantation. Thus, it cannot be concluded that no reasonable juror would have convicted Thomas in light of the new evidence.

Because Thomas has procedurally defaulted Ground 1 of his claim and has failed to show either "cause and prejudice" or a "fundamental miscarriage of

justice," Ground 1 is dismissed. For the reasons stated above, Ground 2 is dismissed on its merits, and there is no need to determine whether or not Ground 2 is procedurally defaulted.

## Ineffective Assistance of Counsel: Grounds 3 and 4

Respondent concedes, and this Court agrees, that Grounds 3 and 4 have been exhausted within the meaning of 28 U.S.C. § 2254. I will therefore consider them on the merits, under the standards required by law.

Under 28 U.S.C. § 2254(d), when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus shall not be granted unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). In reviewing a state court conviction, "a determination of a factual issue made by a State court shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under the "contrary to" clause of 28 U.S.C. § 2254(d)(1), "a federal habeas

court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of the prisoner's case." Id. As the Eighth Circuit articulated in Shafer v. Bowersox, "[a] case cannot be overturned merely because it incorrectly applies federal law, for the application must also be unreasonable." 329 F.3d 637, 646-47 (8th Cir. 2003) (quoting Williams, 529 U.S. at 405, 411, 413).

The Supreme Court set out the standard for ineffective assistance of counsel claims in Strickland v. Washington, 466 U.S. 668, 689 (1984). According to Strickland, a petitioner alleging ineffective assistance of counsel must make two showings. Id. at 687. First, the petitioner must "show that counsel's performance was deficient" in that it "fell below an objective standard of reasonableness." Id. at 687-88. In this regard, petitioner must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The Court in Strickland cautioned that "judicial scrutiny of counsel's

performance must be highly deferential." Id. Strategic choices made after thorough investigation are "virtually unchallengeable," and decisions following less thorough investigation are to be upheld to the extent they are supported by reasonable judgment. Id. at 690-691.

In addition to showing counsel's assistance was deficient, a petitioner must also demonstrate that he or she was actually prejudiced. Id. at 687. According to Strickland, "[t]his requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial . . . ." Id. In order to satisfy the "actual prejudice" standard, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

In Ground 3, Thomas alleges he received ineffective assistance of counsel because his trial counsel refused to call him to testify in his own defense, despite his repeated requests to do so.² Thomas claimed on appeal that had he been given the opportunity, he would have testified that he was not involved in the shooting, but was instead at a friend's house at the time it took place. Resp. Ex. L at 5. Thomas

---

² Thomas also alleges in Ground 3 that the trial court failed to advise him of his constitutional right to testify. This claim is legally distinct from Thomas' ineffective assistance of counsel claim, and was not raised in any of the state court proceedings. Because Thomas has failed to demonstrate "cause" for not raising the claim in state court and has not shown that a "fundamental miscarriage of justice" would result from its dismissal, this claim is procedurally defaulted and dismissed.

contends that had he been able to testify to this effect, the result of the trial would have been different. Id.

Applying the Strickland standard in this case, the Missouri Court of Appeals concluded that Thomas' trial counsel was not ineffective for failing to call him to testify on his own behalf. Rather, the appellate court determined that counsel's decision fell within the realm of "reasonable trial strategy." Specifically, the appellate court stated:

> Counsel spoke with Movant about his right to testify and he did not tell Movant he could not testify; however, counsel did not think that it was in Movant's best interest to testify because Movant had multiple prior convictions and in counsel's experience, "if the trial is going well, you lose more by [a defendant] testifying unless he has to." Counsel thought the trial was going well and the jury did not know about Movant's prior convictions and thus would not have been persuaded to think negatively about Movant. Counsel advised Movant not to testify, Movant did not disagree with this advice but deferred to counsel's experience and opinion, and Movant never indicated to counsel that he wanted to testify. It appeared to counsel that Movant understood the situation.

Resp. Ex. L at 6. The appellate court also determined that Thomas had not been prejudiced by trial counsel's actions because he had not shown "a reasonable probability that the result of the proceeding would have been different had he testified." Id. at 7.

The decision of the Missouri appellate court with regard to this claim is not

contrary to or an unreasonable application of federal law. While an accused does have a fundamental constitutional right to testify in his or her defense at trial, this right may be voluntarily and knowingly waived. Lott v. State, 147 S.W.3d 842, 845 (Mo. App. Ct. 2004). In the absence of extraordinary circumstances, counsel's advice to a defendant not to testify will be considered sound trial strategy as opposed to ineffective assistance of counsel. Id. The record supports the appellate court's conclusion that trial counsel's decision not to call Thomas to testify fell within the realm of reasonable trial strategy and that Thomas was not prejudiced as a result of this decision. Trial counsel's advice to Thomas that he not testify was grounded in his interest in protecting Thomas' image in the eyes of the jury, and was reasonable based on his prior experience. Thomas has also failed to demonstrate that he was prejudiced by trial counsel's advice and that the results of the trial would have been different had he testified. Even if Thomas had testified, there were at least two other eye-witnesses that identified him as the driver of the vehicle. Thus it cannot be said with any certainty that the results of the proceeding would have been different in light of Thomas' testimony. Because Thomas has failed to demonstrate that trial counsel's performance was deficient and that he was prejudiced as a result of such performance, Ground 3 is without merit and is thus dismissed.

In Ground 4, Thomas alleges he received ineffective assistance of counsel because his trial counsel failed to investigate and call alibi witnesses, despite promising to do so in front of the jury. Thomas contends that both his grandmother and brother would have testified that his vehicle was miles away from the scene of the crime at the time it occurred. Further, Thomas asserts that witnesses Brandy Mickens and Carlissa Harvey would have testified that he had been with them at a party at the time of the crime.

Applying the Strickland standard, the Missouri Court of Appeals denied Thomas relief on the issues raised in Ground 4 and concluded that trial counsel's decision not to call the witnesses constituted "reasonable trial strategy." Resp. Ex. L at 8, 10. In reaching this decision, the appellate court adopted the motion court's determination that Thomas' grandmother and brother were not credible witnesses and concluded that their testimony would not have produced a viable defense. Id. at 10. With respect to witnesses Mickens and Harvey, the appellate court stated:

> At the evidentiary hearing, trial counsel testified that he interviewed Harvey and Mickens and determined that their statements were inconsistent with statements that they had given to the police, including specific times and dates, and were contradictory to each other. Counsel discussed his concerns with Movant. Counsel also testified that in his experience, maintaining credibility before the jury was one of the most important things when trying a criminal case, and that if a defendant put on questionable testimony, then he would run the risk of having the jury make a decsion based on which side looked

> better rather than on whether or not the State met its burden. Although both women were under subpoena to testify and counsel intended to call them at trial as he stated in his opening statement, counsel felt that he had successfully discredited the State's case and therefore he decided not to call Harvey and Mickens to avoid risking credibility. Counsel also felt that both Harvey and Mickens would not hold up well under cross-examination due to the inconsistencies in their statements.

Id. at 8. The appellate court declined to address the prejudice aspect of the claim because it concluded that trial counsel's decision not to call Mickens and Harvey was based on reasonable trial strategy and thus not deficient.

The decision of the Missouri appellate court with regard to the issues raised in Thomas' Ground 4 claim is not an unreasonable determination of the facts, nor is it contrary to federal law or an unreasonable application of federal law. The Eighth Circuit has stated that "[d]ecisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed in hindsight.'" Hanes v. Dormire, 240 F.3d 694, 698 (8th Cir. 2001) (citations omitted). A review of the record reveals that trial counsel's decision not to call the witnesses was made in an effort to preserve Thomas' credibility before the jury. The testimony of the witnesses would have been tenuous at best, and could have potentially damaged Thomas' case. Trial counsel believed that he had successfully discredited the State's case and therefore declined to call the witnesses. In light of these factors,

trial counsel's decision fell within the realm of reasonable trial strategy. Because Thomas has failed to demonstrate that trial counsel's performance was deficient, Ground 4 is without merit and is thus dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Torobereja Thomas for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.

**IT IS FURTHER ORDERED** that the petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not grant a certificate of appealability.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of February, 2008.